UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

PATRICE L. KING, )
)
Plaintiff, )
)
vs. ) Civil Action No. CV96-S-2613-NE
)
GOODYEAR TIRE & RUBBER COMPANY, )
)
Defendant. )

FILED
97 DEC 22 AM 9:07

ENTERED
DEC 2 2 1997

## MEMORANDUM OPINION

Patrice King alleges Goodyear Tire & Rubber Corporation discriminated against her because of her race (African American) and gender (female) in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq. The action presently is before the court on defendant's motion for summary judgment. Upon consideration of the pleadings, briefs, and evidentiary submissions, the court concludes the motion is due to be granted.

### I. BACKGROUND

Goodyear Tire & Rubber Corporation hired Patrice King on June 13, 1988 to work at its Decatur, Alabama plant. She joined the United Textile Workers of America, AFL-CIO, and was subject to its collective bargaining agreement with Goodyear.

**A. Denial of Overtime**

King claims Goodyear refused to allow her to work overtime on November 3, 1993. (Complaint ¶ 8.) Under the collective bargaining agreement, an employee completing his or her shift may work overtime on the following shift, but must sign an "overtime sign-up sheet" at least thirty minutes before completion of his or

her shift. (Yerby deposition at 25; Terry deposition at 16-17.) The supervisor for the next shift then awards overtime, according to seniority,[1] the amount of overtime available, and the qualifications of the persons who registered. (Yerby deposition at 25.) On November 3, 1993, two white male employees (Roger Johnson and Barry Bullard) registered for overtime, but plaintiff did not. (Yerby deposition at 58; Kitchens deposition at 33-35.) Even so, those employees had greater seniority than plaintiff. (Kitchens deposition at 36.)

Patrice King nevertheless claims there was a grandiose plot to deny her overtime. She alleges that she worked considerable amounts of overtime in 1993, but that overtime hours were cut in the last two months of that year.[2] (Plaintiff's deposition at 43-44.) Plaintiff alleges that Roger Johnson and another employee, Johnny Shipley, were the only two employees on her shift who were allowed to work overtime during the last months of 1993. (*Id.* at 64-65.) Even so, plaintiff admits Johnson and Shipley were more senior to her, and entitled to receive overtime before she did. (*Id.* at 65-66.)

---

[1] Seniority is determined according to time worked in a particular department at Goodyear's plant. (Yerby deposition at 47.)

[2] Plaintiff alleges that "other employees" complained about the amount of overtime she worked and promised to "put a stop to it." (Plaintiff's statement of facts at 3-4.) Those allegations are based on hearsay conveyed to another employee, Kevin Greeson, by unidentified Goodyear employees. (Greeson deposition at 20, 61.) There is no indication that hearsay could be reduced to admissible form at trial, because those other employees are unidentified. Consequently, this court may not consider those statements when deciding the motion for summary judgment. Pritchard v. Southern Company Services, 92 F.3d 1130, 1135 (11th Cir. 1996)("There is nothing to indicate that Pritchard's statements (which were based on the statements of unknown co-workers) will lead to admissible evidence").

2

### B. Denial of Seniority Rights

Patrice King also alleges she was denied seniority rights on November 11, 1993. Her position as a "scrubber operator" on the first shift of "Department 4-3" was eliminated in the first week of that month: the scrubber she used to clean floors in that department malfunctioned and was shipped to the manufacturer for repair. With her position eliminated, King was placed "on a roll." Employees "on a roll" are permitted to bid for another job in the department or "bump" others with less seniority out of jobs they desire. (Yerby deposition at 46-48.)

Employees "on a roll" also may bid on odd jobs in their department. Even so, Goodyear retains employees as "extra hands" to fill vacant positions or substitute for absent employees. (Yerby deposition at 37-38.) According to the collective bargaining agreement, an "extra hand" has greater seniority than an employee "on a roll" for odd jobs outside that employee's classification. (Yerby deposition at 41; Kitchens deposition at 32; Terry deposition at 45, exhibit 9.[3]) Therefore, an "extra hand" had greater seniority than plaintiff while she was "on a roll," except for "scrubber operator" jobs.

Plaintiff was "on a roll" on November 11, 1993, and desired to perform a janitorial job for the day. (Plaintiff's deposition at 95-99, 102.) An "extra hand," Danny Scoggins, also desired the

---

[3]The collective bargaining agreement states: "Regular employees will be moved within their classification before extra hands except where qualifications will not permit. In all other cases extra hands will be assigned before regular employees except where qualifications will not permit."

3

janitorial job that day, and plaintiff thus was required to perform a "yarn checker" job instead. (*Id.*) Plaintiff argues that Scoggins was not an "extra hand" on first shift, but that he was a third shift employee working overtime on her shift. (Scoggins personnel file at 1; *see* Kitchens deposition at 33-34.) According to Timothy Ray Borden, union president in 1993, the decision to award a position to an "extra hand" working overtime on plaintiff's shift was a violation of her seniority rights:

> Q. Okay. Let's say that Patrice is working on her shift, first shift, as a for instance, and she's coming in while her machine is being repaired. She's been held on that job. What if an extra hand from third shift is working over on her shift? Does she have first choice of job over that overtime worker as an extra hand that's working on her shift?
>
> A. Someone's working over from third shift on her assigned shift?
>
> Q. Right.
>
> A. At that time, yes, she would have come ahead of that person, provided she had the qualifications.

(Borden deposition at 20-21.) All that may be (and for purposes of defendant's motion, the court assumes it *is*) true, but it was a tempest in a teapot. Plaintiff was denied the right to choose her job only for one day, and she does not know what difference, if any, there was in pay between the two jobs. (Plaintiff's deposition at 95, 105, 106.)

## II. CLAIMS BEFORE THIS COURT

Plaintiff's complaint only states two claims for consideration by this court:

4

8. On or about November 3, 1993, a Goodyear supervisor informed King that she was not allowed to work overtime. At that time, white male employees were allowed to work overtime whenever they please [sic].

9. On or about November 3, 1993, Goodyear violated King's seniority rights by bumping her out of her position and replacing her with a white male with less seniority.

(Complaint ¶¶ 8, 9.) With counsel's legal slight of hand, those two claims magically multiply into three during plaintiff's opposition to summary judgment: i.e., plaintiff alleges discrimination in "overtime policies and procedures," "seniority rights and job choices," and "bidding of Patrice's scrubber position." (Plaintiff's brief at 2.) Plaintiff never amended her complaint to state a claim for "discriminatory bidding of a scrubber position." Furthermore, her argument on that newfound claim demonstrates that it is unrelated to her claims for "denial of overtime" or "denial of seniority rights." (Id. at 8-9.) Accordingly, this court finds that plaintiff's only claims are for "denial of overtime" and "denial of seniority rights." Defendant is entitled to summary judgment on those claims.

### III. DISCUSSION

Plaintiff bears the burden of proving that defendant intentionally discriminated against her because of her race and/or gender. That can be done either by direct or circumstantial evidence. When plaintiff's evidence is circumstantial in nature, as is the case here, the Supreme Court has developed a three stage framework for focusing the inquiry into the employer's motivation.

5

See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

First, plaintiff must first establish a *prima facie* case of discrimination based on race and/or gender by demonstrating: (1) she belongs to a protected class; (2) she was subjected to an adverse employment action; (3) and her employer treated similarly situated employees outside her classifications more favorably. *See, e.g., Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). If plaintiff establishes a *prima facie* case, then at the second stage of analysis the burden of production shifts to defendant to rebut the presumption of intentional discrimination by articulating legitimate, nondiscriminatory reasons for the employment action. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093. If defendant does so, then in the final step of the inquiry plaintiff must have an opportunity to demonstrate that defendant's stated reasons merely are pretexts for unlawful, discriminatory motives. *Id*.

**A.  Denial of Overtime on November 3, 1993**

**1.  Adverse employment action**

Defendant contends plaintiff cannot demonstrate she suffered an adverse job action, because she did not apply for overtime work on November 3, 1993. Plaintiff testified, however, that the "overtime sign-up" sheets relied upon by defendant are not

6

dispositive. Instead, she claims that employees did not sign the overtime sheets until they were informed by the shift supervisor that overtime was available. (Plaintiff's deposition at 47, 53-54.) Thus, she contends she did not sign the overtime sign-up sheet on November 3, 1993, because she was not told that overtime was available. (Plaintiff's deposition at 58-59.) That testimony is sufficient to satisfy the second element of a *prima facie* case.

### 2. Favorable treatment of similarly situated employees

Defendant also claims plaintiff cannot demonstrate she was treated less favorably than similarly situated employees outside her protected classifications. "To make a comparison of the plaintiff's treatment to that of non-minority employees, the plaintiff must show that [s]he and the employees are similarly situated in all relevant respects." *Holifield*, 115 F.3d at 1562.

Only two first shift employees registered for overtime on November 3, 1993: Roger Johnson and Barry Bullard. (Kitchens deposition at 33-35.) Johnson and Bullard both were senior to plaintiff. Furthermore, plaintiff only identified Roger Johnson and Johnny Shipley as employees who were allowed to work overtime when she was not. Like Bullard and Johnson, Shipley has greater seniority than plaintiff.[4] Thus, defendant contends Johnson, Bullard, and Shipley are not "similarly situated in all relevant

---

[4] Furthermore, Shipley testified that he worked on second shift on November 3, 1993, and could not have competed with plaintiff for overtime. (Shipley deposition at 25-26.)

7

respects" to plaintiff, because they possessed more seniority and were entitled to priority over plaintiff when overtime was awarded.

Plaintiff offers no specific evidence in response to defendant's argument. Instead, she offers the following argument alleging she has demonstrated a *prima facie* case.

> The deposition testimony before the court demonstrates (1) two black females begin working daily overtime (2) immediately other employees express resentment to each other and management concerning the fact that the two black females are working overtime (3) the two black females are warned by a union representative that their overtime is about to be eliminated (4) the two black females are informed by management that no overtime is available to them (5) white males are allowed to continue working overtime.

(Plaintiff's brief at 14.) That argument is useless, because it only claims "white males are allowed to continue working overtime." Plaintiff does not allege <u>similarly situated</u> white or male employees (*i.e.*, those with equal or lesser seniority than her) were allowed to work overtime, and she certainly presents no such evidence. Therefore, the court concludes plaintiff fails to demonstrate a *prima facie* case, and summary judgment is appropriate on her claim for denial of overtime.

### B. Denial of Seniority Rights and Job Choice

Defendant argues that plaintiff cannot prove she suffered an adverse employment action on November 11, 1993.[5] (Defendant's brief at 42-43 n.3.) The Eleventh Circuit has never provided a

---

[5]Plaintiff's complaint only alleges she was denied seniority rights "on or about November 3, 1993." (Complaint ¶¶ 8, 9.) Plaintiff has not amended her complaint, but now claims that she was denied seniority rights on November 11, 1993. Defendant agrees that plaintiff's complaints related to denial of seniority rights arose on November 11, 1993.

8

precise definition of an "adverse employment action,"[6] but the Fifth Circuit defines that phrase as encompassing only "ultimate employment decisions," such as "hiring, granting leave, discharging, promoting, and compensating." *See Mattern v. Eastman Kodak Company*, 104 F.3d 702, 707 (5th Cir. 1997). In contrast, plaintiff's deposition testimony demonstrates that her claim certainly is not one for an "ultimate employment decision."

> Q. Okay. So you're claiming that on November 11, 1993, there were two jobs available for which you would have qualified, and you were not given a choice between those two jobs, resulting in you becoming a yarn checker for the day and Danny Scroggins getting the other job. And you say that resulted in him being paid more than you for the day; is that correct?
>
> A. No. I'm not saying — I'm saying he was denying me my privileges as far as giving me the option to choose. ...
>
> ...
>
> Q. And are you telling me as you sit here today that had you have been offered a job between janitorial or yarn checker, you would have elected janitorial for the day?
>
> A. I'm not saying that. I would like to have been given the choice.
>
> Q. What choice would you have made had you been —
>
> A. I can't say that right now. I don't know what choice I would have made then. Today I may make a different choice than I would have made then.

---

[6] *See Wu v. Thomas*, 996 F.2d 271, 274 (11th Cir. 1993)("Although we have interpreted Title VII to mean that an employer cannot retaliate by taking an 'adverse employment action' against an employee, ... we have never defined what this general phrase means.")

9

(Plaintiff's deposition at 95-96, 100.)  Plaintiff further admits that the janitorial and yarn checker jobs "probably paid about the same."  (*Id.* at 105-06.)  Based on those facts, the court determines that plaintiff fails to demonstrate that she was adversely affected in any way by defendant's alleged action on November 3, 1993.  Thus, she has not stated a *prima facie* case, and summary judgment is appropriate.

### IV. CONCLUSION

For the foregoing reasons, the court concludes summary judgment is due to be granted on all of plaintiff's claims.  An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 22nd day of December, 1997.

_____
United States District Judge

10